# Welsh v. The State.

*Indictment for Murder.*

1. *Objections to grand jury* —Where the record shows that, on the formation of the grand jury which returned the indictment under which the appellant was convicted in the City Court of Gadsden, the number of jurors was reduced below fifteen, that the sheriff summoned from the qualified citizens in Etowah county twice the number of persons required to complete the grand jury, and that the grand jury was completed from the persons so summoned, the objection that the minute-entry does not show that the court ordered the sheriff to summon such persons to complete the grand jury is within the curative influence of section 4445 of the Code, and can not be availed of on appeal to reverse the judgment of conviction,

[Welsh v. The State.]

2. *Waiver of misnomer in indictment.*—An objection to an indictment for murder, that it does not properly state the names of the deceased and the defendant, respectively, can not be made for the first time on appeal.

3. *Special venire in capital case.*—A special *venire* in a capital case which directs the sheriff to summon "sixty persons competent to serve as jurors for the trial of this cause," etc., is essentially a mandate to summon only citizens of the county, and is not objectionable because it does not in terms direct citizens of the county to be summoned.

4. *Hearsay testimony.*—The testimony of a witness that a person, other than defendant, confessed to the witness that he himself committed the crime charged against defendant, is hearsay, and inadmissible.

5. *Reasonable doubt; charge, as to.*—In a criminal case, the court charged the jury as follows: "The term 'reasonable doubt' means a doubt which has some good reason for it arising out of the evidence in the case,—such doubt as you are able to find in the evidence a reason for. It means such a doubt as would cause a prudent man to pause and hesitate before accepting as true and acting upon any matters alleged or charged in the graver or more important affairs of life. As applied to evidence in criminal cases, it means an actual and substantial doubt, growing out of the unsatisfactory nature of evidence in the case. It does not mean a doubt which arises from some mere whim or vagary, or from any groundless surmise or guess. . . . By a 'reasonable doubt' is not meant absolute certainty. There is no such thing as absolute certainty in human affairs." *Held*, that there was no error in this charge.

6. *Confessions; charge, as to.*—A charge given in a criminal case, which instructs the jury that deliberately made and precisely identified confessions are among the most effectual and satisfactory proofs of guilt, but which leaves to the jury the question whether the confessions adduced in the case at bar are of that character, is not erroneous.

7. *Same.*—A charge is not erroneous, which instructs the jury in a criminal case that they are not required to give equal credence to every part of a confession made by the defendant, but that they may weigh the confessions in the light of the surrounding circumstances, the motives which may have induced it, and its consistency with the other evidence; and that the jury, without capriciously accepting or rejecting any portion, should credit such parts as they should find reason for believing, and reject that part which they find reason for disbelieving.

8. *Same.*—It is error to charge the jury in a criminal case that what the defendant said against himself in a confession made by him "the law presumes to be true, because against himself."

APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE.

The indictment in this case charged that "before the finding of this indictment Tally Welsh, whose true christian name is to the grand jury unknown otherwise than as stated, unlawfully and with malice aforethought killed Will Welsh, whose true christian name is to the grand jury unknown otherwise than as stated, by shooting him with a pistol, against the peace," etc. The defendant pleaded "not guilty," and was convicted of murder in the first degree.

The record shows that, upon the call of the *venire* for the grand jury which found the indictment in this case, "the number of said jurors being reduced below the number of fifteen, to-wit, to the number of fourteen, the sheriff of Etowah county summoned from the qualified citizens of said county two persons, to-wit: A. V. Sutherlin and W. H. Love;". and that the grand jury was completed from the persons so summoned. The appellant assigns as error that the record does not show that "the court ordered the sheriff to summon the two persons named to complete the grand jury;" and that it does not show "that they were qualified citizens of the county to serve on the g and jury;" and that "it does not show that said grand jury was organized under the act creating the City Court of Gadsden." It is also assigned as error that "the indictment is bad, in not stating the names of the appellant and of the deceased properly."

The defendant separately excepted to the following portions of the court's general charge to the jury: (1) "The term 'reasonable doubt' means a doubt which has some good reason for it arising out of the evidence in the case,— such a doubt as you are able to find in the evidence a reason for. It means such a doubt as would cause a prudent man to pause and hesitate before accepting as true and acting upon any matters alleged or charged in the graver or more important affairs of life. As applied to evidence in criminal cases, it means an actual and substantial doubt, growing out of the unsatisfactory nature of evidence in the case. It does not mean a doubt which arises from some mere whim or vagary, or from any groundless surmise or guess; and, while the law requires you to be satisfied from the evidence of the defendant's guilt beyond a reasonable doubt, it, at the same time, prohibits you from going outside of the evidence to hunt up doubts upon which to acquit defendant. In arriving at your verdict, it is your duty to carefully and candidly consider the entire evidence in the case, and in so doing you should entertain such doubts only as arise from the evidence and are 'reasonable,' as already defined; and unless the doubt is a reasonable one, and does so arise, it will not be sufficient in law to authorize a verdict of not guilty. Then, gentlemen, if, upon a careful and candid review of all the evidence, you ask your inward conscience, 'Is he the guilty one?' and the answer is, 'I doubt if he is,' you should acquit; but if the answer is, 'I have no doubt of it,' you should convict. So then, gentlemen, by a 'reasonable doubt' is not meant absolute certainty. There is no such thing as absolute certainty in human affairs; for

[Welsh v. The State.]

justice is, after all, but an approximate science, and its ends are not to be defeated by a failure of strict and mathematical proof." (2) "Confessions of guilt, gentlemen, when deliberately made, are among the most effectual and satisfactory proofs that can be received in courts of justice. Their value depends on the supposition that they are deliberately made and precisely identified, and on the presumption that a rational being will not make admissions prejudicial to his interest and safety, unless when urged by the promptings of truth and conscience." (3) "There is no rule of law requiring you, gentlemen of the jury, to give equal credence to every part of the confessions made by the defendant and introduced in evidence before you, unless it is clearly disproved. All of the confession must be weighed in the light of the surrounding circumstances, the motives which may have induced it, and its consistency with the other evidence; and you, gentlemen, without capriciously accepting or rejecting any portion, should credit such parts as you find reason for believing, and reject that part which you find reason for disbelieving." (4) "You are instructed that, in considering what the defendant said after the fatal act, you must consider it all together. He is entitled to the benefit of what he said for himself if true, as is the State to the benefit of what he said against himself, in any conversation proved by the State. What he said against himself the law presumes to be true, because against himself; but what he said for himself the jury are not bound to believe, because said in a conversation proved by the State. You may believe it or disbelieve it, as it may be shown to be true or false by the evidence in the case."

W. H. STANDIFER, for appellant.

WM. L. MARTIN, Attorney-General, for the State, cited *Tanner v. State*, 92 Ala. 1; *Davis v. State*, 92 Ala. 20; *Wells v. State*, 88 Ala. 239; *Martin v. State.* 77 Ala. 1; *Lundy v. State*, 91 Ala. 100; *Ross v. State*, 92 Ala. 28; 3 Brick. Dig. pp. 284, 285, 287; 3 Am. & Eng. Ency. Law, p. 440; *Eiland v. State*, 52 Ala. 322.

McCLELLAN, J.—The act establishing the Gadsden City Court provides that grand and petit jurors shall be drawn, summoned and empannelled therein in the manner provided by law for the drawing, summoning and empannelling of such jurors for the Circuit Court of Etowah county.—Acts 1890-91, pp. 1092-1103. The law which ob-

[Welsh v. The State.]

tains in respect of jurors in said Circuit Court is that embodied in sections 4299 *et seq.* of the Code; Etowah county being expressly excepted from the operation of the later enactment which is noted and set out at pages 131 to 135 of the Criminal Code. And the objections now made to the formation of the grand jury which returned the indictment under which appellant was convicted are within the curative influence of section 4445 of the Code, and can not be availed of to reverse the judgment below.—*Tanner v. State*, 92 Ala. 1; *Davis v. State, Ib.* 20.

The objection now for the first time taken to the indictment, going to its averments of the names of the deceased and defendant, respectively, is without merit.—*Wells v. State*, 88 Ala. 239.

Equally untenable is the objection to the order for a special *venire*, which is based on the absence therefrom of a direction to summon citizens of *Etowah county* to serve thereon. Only citizens of that county were "competent to serve as jurors" on the trial of the cause, and the mandate that the sheriff summon "sixty persons competent to serve as jurors for the trial of this cause," &c., &c., was essentially a mandate to summon only citizens of the county.—*Martin v. State*, 77 Ala. 1.

The foregoing objections, and many others, to supposed irregularities and insufficiencies apparent on the record, are insisted on here in an assignment of errors in which nearly everything that happened on the trial, and nearly every order made, are relied on here to reverse the judgment, though none of these matters were at all mooted in the court below. There is no semblance of merit in any of these objections; and we will not cumber this opinion by further reference to them in detail.

The proposed testimony of the witness Warren Lancaster, to the effect, or which would have tended to show, that one Lee Lancaster had admitted or confessed to the witness that he, Lee Lancaster, killed Will Welsh, for whose murder defendant was being tried, was the merest hearsay, wholly irrelevant and incompetent, and the court properly excluded it from the jury.—3 Brick. Dig., p. 287, § 592; *State v. Duncan*, 6 Ired. L. (N. C.) 236; *State v. Haynes*, 71 N. C. 79.

The definition of a reasonable doubt given by the court, and excepted, is in strict harmony with many decisions of this court.—*Lundy v. State*, 91 Ala. 100; *McKleroy v. State*, 77 Ala. 95; *Lowe v. State*, 92 Ala. 28; *Ross v. State* 92 Ala. 28.

The confessions of the defendant introduced at the trial appear to have been accurately adduced as made,—"precisely

[Welsh v. The State.]

identified," as this idea is expressed in the books; at least such was the tendency of the evidence in that regard. Whether they were deliberately made and accurately proved were matters to be considered by the jury in determining what weight to accord them in reaching a conclusion as to the facts sought to be established by them. The second paragraph of the court's general charge, to which an exception was reserved, did not take away or fetter the jury's right to reach any conclusion they might deem just upon this inquiry, but was only a declaration to them of the view the law takes of deliberately made and precisely identified confessions, namely, that they are among the most effectual and satisfactory proofs of guilt, leaving to them the question whether the confessions adduced in this case were of that character. This part of the charge, we conclude, though not without some hesitation, albeit it appears to have been copied from Mr. Greenleaf's Commentaries, involved no reversible error.—1 Greenl. Ev. § 215.

The third paragraph of the charge, as to the manner of weighing and sifting confessions, and declaratory of the jury's right to believe a part of a confession and disbelieve another part, and of the rules to govern them in accepting as true or rejecting as false confessions in whole or in part, is free from error.—3 Brick. Dig., p. 285, § 550.

The fourth charge of the court we think was erroneous, in that it is there declared, *inter alia*, that what the defendant said against himself in the conversation or statement introduced as a confession "the law presumes to be true because against himself." There is a sort of presumption of the truth of declarations against interest which the law adjudges as the basis of admissibility. There is also a sort of legal presumption that statements made under the sanction of an oath or of approaching dissolution are true, and this presumption is the basis of the admissibility of sworn testimony and dying declarations. But it extends no further than this. When this office of the presumption has been performed, it ceases to exist. It no longer attends upon evidence when it was gotten before the jury. Once there, it must stand upon its own inherent force and reasonableness, and the jury are neither helped nor hindered with respect to any view of its truth or falsity they may be inclined to take by any legal presumption whatever. The charge was an invasion of the jury's province; and should not have been given.—*Stix & Co. v. Keith*, 85 Ala. 465.

Reversed and remanded.