[Goodlett v. The State.]

# Goodlett v. The State.

*Indictment for Murder.*

1. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where a witness testified that her house was a short distance from the house where the deceased was killed, it is not competent for the defendant to ask such witness on cross-examination who came to her house with a certain named person, not shown to have been connected with the homicide in any way, immediately after the killing; the evidence called for by such question having no pertinency to any issue involved, and being irrelevant and immaterial.

2. *Same; same.*—On a trial under an indictment for murder, where it is shown that the shot which killed the deceased was fired from the outside of the house and through the wall thereof, the fact as to whether or not the persons in the room with the deceased at the time were playing cards, is impertinent, irrelevant and immaterial, and evidence of such facts is inadmissible.

3. *Same; evidence of flight of another inadmissible.*—On a trial under an indictment for murder, where the evidence tending to show the commission of the homicide by the defendant is entirely circumstantial, it is not competent for the defendant to show that a certain other named person left the neighborhood of the homicide a very short time after the killing.

4. *Same; same.*—In such a case, before there is any evidence introduced tending in any way to connect the defendant with the commission of the crime, and after one of the witnesses for the State has testified that the defendant left a house which was a short distance from the house of the deceased about an hour or an hour and a half before the killing, it is not competent for the defendant, in the absence of a statement as to the fact expected to be shown, disclosing its pertinency, to ask such witness upon his cross-examination, "Where did defendant say he was going?"

5. *Same; same.*—On a trial under an indictment for murder, where the evidence tending to show that the defendant committed the homicide is entirely circumstantial, it is not competent for the defendant to introduce in evidence the declarations of the deceased that another person had threatened

[Goodlett v. The State.]

her life; such evidence being purely hearsay and inadmissible.

6. *Trial in criminal case; charge of court to jury.*—In the trial of a criminal case, charges which instruct the jury that before they can find the defendant guilty, they must be satisfied to a moral certainty not only that the proof is consistent with the guilt of the defendant, but that it is wholly inconsistent with every other rational conclusion, and that unless they are so convinced by the evidence of defendant's guilt, that they would venture to act upon that decision in matters of the highest concern and importance to their own interest, they must find the defendant not guilty, are argumentative and properly refused.

7. *Same; same.*—In the trial of a criminal case, a charge which instructs the jury "that no man should be convicted of a crime whose guilt is in reasonable doubt, or in the slightest reasonable doubt," is misleading and properly refused.

APPEAL from the City Court of Anniston.

Tried before the Hon. THOMAS W. COLEMAN, JR.

The appellant in this case, Berry Goodlett, was indicted and tried for the murder of Ella Crook, was convicted of murder in the second degree, and sentenced to the penitentiary for twenty years.

The evidence of the State tending to show that the defendant shot and killed Ella Crook as charged in the indictment was circumstantial.

Millie Rowland, a witness for the State, testified that she lived about 200 yards from the house of Ella Crook, the deceased; that the defendant was at the house of the witness during the day of the night in which Ella Crook was killed; that Ella Crook was killed by being shot between 8 and 9 o'clock in the night; that the defendant left her house about 8 o'clock; that immediately after the killing one John Bush came to the witness' house. Upon the cross-examination of this witness by the defendant she was asked the following question: "Who came with John Bush to your house immediately after the killing?" The State objected to this question, the court sustained the objection, and the defendant duly excepted.

One Gilbert Jelks was introduced as a witness for

the State and testified that he was at the house of Ella Crook when she was killed, and was in the room with her and several other persons; that the shot which killed her was fired from the outside of the house and through the wall; and that at the time she was shot Ella Crook was lying on the bed. Upon the cross-examination of this witness by the defendant he was asked the following question: "Were you playing cards there that evening?" The State objected to this question, the court sustained the objection, and the defendant duly excepted. This witness further testified that Ross Crook, who lived about a mile and a half from Ella Crook's house, left in time to get home before dark. Upon the cross-examination of this witness by the defendant, he was asked the following question: "Didn't Ross Crook leave that neighborhood in a very short time after the killing?" The State objected to this question, the court sustained the objection, and the defendant duly excepted.

John Rowland, as a witness for the State, testified that he was with the defendant on the day of the night in which Ella Crook was killed; that he took dinner with the defendant at the house of Millie Rowland; that the defendant left the witness at the dinner table and came back to the house of Millie Rowland about half past 7 o'clock, and said he had to go. Upon the cross-examination of this witness he was asked the following question: "Where did the defendant say he was going?" The State objected to this question, the court sustained the objection, and the defendant duly excepted.

After the introduction of these witnesses, there were other witnesses introduced who testified that they had heard the defendant say that he would kill Ella Crook if she did not marry him.

The testimony introduced by the defendant, as stated in the opinion, tended to prove an *alibi*. The defendant offered to prove declarations made by the deceased Ella Crook, and the fact that Simon Crook had threatened her life. The State objected to the making of this proof, the court sustained the objection, refused to al-

low the defendant to introduce such evidence, and to this ruling the defendant duly excepted.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (2.) "Before you can convict the defendant each of you must be satisfied to a moral certainty not only that the proof is consistent with the defendant's guilt, but that it is wholly inconsistent with every other rational conclusion; and unless each of you are so convinced by the evidence of the defendant's guilt that you would each venture to act upon that decision in matters of highest concern and importance to your own interest, then you must find the defendant not guilty." (3.) "The court charges you that before you can convict the defendant you must be satisfied by the evidence that has been introduced from the stand to a moral certainty and beyond all reasonable doubt, that the proof is perfectly consistent with the guilt of the defendant and is wholly inconsistent with every other rational conclusion or reasonable supposition but that of his guilt, and unless you and each of you are so thoroughly convinced by the evidence alone that has been introduced from the stand, of his guilt, that you would venture to act upon such conviction in matters of the highest concern and importance to yourselves or your own interest, you should not convict him." (4.) "The court charges the jury that no man should be convicted of a crime, whose guilt is in reasonable doubt or in the slightest reasonable doubt." (10.) "The court charges you, gentlemen of the jury, that circumstantial evidence justifies a conviction only when it is inconsistent with every reasonable theory of innocence, and you should be so convinced by it that each of you would be willing to act on the decision in the mattes of highest concern to yourselves, or you should not convict this defendant." (12.) "To convict in a criminal case on circumstantial evidence, the jury should be so convinced that they would be willing to act upon it in mattes of highest concern to their own interest."

MATTHEWS & WHITESIDE, for appellant.

CHAS. G. BROWN, Attorney-General, for the State.

TYSON, J.—The evidence shows that the deceased was killed in her house while in bed between 8 and 9 o'clock at night by the discharge of a pistol or gun in the hands of some person on the outside of the house. The place of the homicide was in Calhoun county and some nine miles distant from the city of Anniston. The testimony introduced in behalf of the State tended to show that the defendant fired the fatal shot. He is shown to have resided in Anniston at the time of the killing and admits his presence in the vicinity of the place of the killing on the day it occurred. He, however, denies that he was in that vicinity at the time of the occurrence, and attempts to show that he was in Anniston. He testified that he left a certain house, which is shown to be within two hundred yards of the deceased's house, about 6 o'clock in the evening, for Anniston, and arrived in that city a little after 8 o'clock. From this statement, it is clear the main defense invoked was that of an *alibi.*

During the trial many exceptions were reserved to the rulings of the court in excluding evidence. We are unable to see the pertinency of the question propounded by defendant on cross-examination to Mollie Rowland, "Who came with John Bush to your house immediately after the killing?" Its answer could have shed no light upon the issues involved. The same observation is applicable to the question propounded to Gilbert Jelks, "Were you playing cards there that evening?"

While it was entirely competent for defendant to show that another committed the crime, no error was committed in sustaining the objection of the State to the question: "Didn't Ross Crook leave that neighborhood in a very short time after the killing?"—*Owensby v. The State,* 82 Ala. 63; *Kemp v. The State,* 89 Ala. 52.

At the stage of the trial at which the question propounded by defendant to John Rowland, "Where did defendant say he was going?" was asked, we cannot affirm that the court committed an error in sustaining

[Morrell v. The State.]

the objection of the solicitor to it. The answer may have been material or immaterial. And in the absence of a statement as to the fact expected to be shown, we cannot presume that the answer would have been material.

The evidence offered by defendant of the declarations of the deceased that Simon Crook had threatened her life was the barest hearsay and inadmissible. Had Simon admitted to the witness that he committed the homicide, his admission or confession would have been incompetent.—*West v. The State*, 76 Ala. 98; *Snow v. The State*, 58 Ala. 372. The fact that the evidence offered was a declaration of the deceased to the witness instead of a statement by Simon to the witness, does not relieve it from being hearsay.—*Tatum v. The State*, 131 Ala. 32; 31 So. Rep. 369.

Written charges numbered 2, 3, 10 and 12, requested by defendant were properly refused.—*Thompson v. The State*, 131 Ala. 18; *Amos v. The State*, 123 Ala. 50; *Rogers v. The State*, 117 Ala. 9.

Charge 4 was misleading and correctly refused.

Affirmed.